Hillsborough-southern judicial district
No. 99-007

## THE STATE OF NEW HAMPSHIRE

v.

## DICKENS ETIENNE

March 7, 2001

*Philip T. McLaughlin*, attorney general (*Simon R. Brown*, assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

NADEAU, J. The defendant, Dickens Etienne, appeals from his conviction for three counts of first degree assault and one count of attempted murder. *See* RSA 631:1 (1996); RSA 630:1-b (1996); RSA 629:1 (1996). The defendant asserts that the Superior Court (*Hollman*, J.) abused its discretion in disallowing two lines of cross-examination. We reverse and remand.

In the early morning hours of September 1, 1997, gunshots were fired in the crowded Bahama Beach Club in Nashua, injuring three people. Among those shot was Raymond Guillermo, who later offered conflicting identifications of the perpetrator. At his first police interrogation in the emergency room where he was being treated for gunshot wounds, he identified the person who shot him as a "black man, six foot one, [with a] thin build." Guillermo also indicated that the shooter was someone with whom he had a prior altercation. A police officer testified that Guillermo was adamant in this assertion. Also during that interview, Guillermo identified the defendant's picture from among an array of photographs. During a subsequent session with the police, Guillermo indicated his assailant was wearing an orange shirt. With the exception of the photo identification, Guillermo's initial statements tended to exculpate the defendant.

In March 1998, approximately six months later, Guillermo made two significant changes to his identifications: he recanted his

assertions that the assailant was wearing an orange shirt and that he had had a prior altercation with the assailant. Guillermo testified as to each of his identifications at trial, but said the later statements were accurate.

One month prior to these recantations, Guillermo's attorney had filed, on his behalf, a civil law suit against the Bahama Beach Club, which alleged he was injured because of the club's negligent inspection of guests for possession of weapons. On April 22, 1998, in its special plea and brief statement, the club indicated it intended to raise a comparative fault defense against Guillermo, alleging he was acquainted with the assailant prior to the night of the shooting.

The State filed a motion *in limine* to preclude the defense from introducing evidence of this civil suit. The defendant argues that information about this suit is probative of Guillermo's credibility, and that the State and Federal Constitutions protect his right to confront Guillermo regarding his potential bias. Specifically, the defendant asserts that Guillermo's decision to recant his initial identification was motivated by a desire to increase his chances of recovery in the civil suit. The defendant argues that the club's comparative negligence defense would be diminished if Guillermo had not known the shooter. The trial court granted the State's motion *in limine*, suggesting the evidence was either irrelevant or confusing to the jury.

■■ "[T]he right to cross-examine adverse witnesses in criminal cases is fundamental." *State v. Rodriguez*, 136 N.H. 505, 508 (1992) (quotation omitted). Cross-examination provides the defendant "a right . . . to meet the witnesses against him face to face, and be fully heard in his defense." N.H. CONST. pt. I, art. 15. This includes the right to expose the possible biases of witnesses. *See State v. Allison*, 134 N.H. 550, 558 (1991). While it is within the discretion of the trial court to limit cross-examination, "the defendant may not be denied the opportunity to make at least a threshold level of inquiry." *Id.*

*State v. Allison* was a negligent homicide case in which a witness had given the police a statement damaging to the State's case. *Allison*, 134 N.H. at 552. Later, the witness testified to materially different facts that benefited the State. *Id.* The defendant asserted that the witness had been summoned to a division of motor vehicles hearing, which was canceled following his favorable testimony for the State. *Id.* at 557. The defendant argued this evidence would help establish motivation for the change from the witness's earlier statements. *Id.* We determined it was improper for the trial court to exclude this line of questioning. *Id.* at 558.

■ Notably, in *Allison*, the trial court had permitted "the questioning of [the witness] 'pertaining to the existence of a civil writ in which [the witness was] a defendant as a result of his alleged negligence in the same accident.'" *Id.* at 557. We reiterate our holding that a criminal defendant's right to confront adverse witnesses necessarily includes the right to cross-examine regarding motive and bias arising from contemporaneous civil actions in which the witness has a financial interest. We conclude the trial court erred by excluding the evidence regarding Guillermo's civil suit.

■ We reject the State's contention that this error was harmless. For us to rule that error was harmless, the State must demonstrate beyond a reasonable doubt that the error did not affect the verdict. *See Allison*, 134 N.H. at 556. The State argues the defendant was afforded sufficient opportunity to discredit Guillermo's testimony on grounds other than the pending civil matter. We believe, however, that the defendant should have been able to inquire into bias that might exist from the hope of financial gain in a pending civil lawsuit, even though he was otherwise allowed to discredit the witness for confusion or intoxication at the time of the relevant events. Therefore, we cannot say the court's decision to exclude this evidence was harmless.

■ The State also contends Guillermo's testimony is cumulative in the context of other abundant compelling evidence. We disagree. The defendant was convicted on three counts of first degree assault and one count of attempted murder. There was eyewitness testimony from a second witness that the defendant shot a gun into the crowded club. There was further evidence regarding who shot the other victims and circumstantial evidence regarding the defendant's possession of a gun that night. We cannot conclude that the jury considered these various accounts to the same degree as the testimony offered by Guillermo. Further, given that there were four separate convictions, we cannot determine with certainty which testimony the jurors found credible toward sustaining any of these convictions. Accordingly, we reverse the convictions and remand.

Given the likelihood the defendant's second argument will arise during any retrial, we briefly address it. The defendant argues he should have been allowed to impeach the credibility of State witness Morelli by inquiring about a police report alleging sexual assault that she filed and later recanted.

■ Our recent decision in *State v. White*, 145 N.H. 544 (2000), sets forth the applicable standard for determining if prior allegations of

sexual assault are probative of truthfulness. There, we said that a trial court correctly admits such evidence after a determination "that the prior allegations were demonstrably false, which we interpret to mean 'clearly and convincingly untrue.'" *State v. White*, 145 N.H. at 548. If, at retrial, the defendant moves to cross-examine regarding Morelli's prior allegations, the court should apply this standard.

*Reversed and remanded.*

BRODERICK, J., concurred; HORTON, J., retired, and GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.